REPUBLIC WESTERN INSURANCE COMPANY, Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY, et al., Defendants.

No. C 00–0921 JL.

United States District Court, N.D. California.

Jan. 24, 2003.

James J. Braze, Gordon & Rees, LLP, San Francisco, CA, for Plaintiff.

Robert M. Peterson, Asim K. Desai, Carlson Calladine & Peterson LLP, Los Angeles, CA, Lee S. Harris, Brian E. Soriano, Goldstein Gellman Melbostad & Gibson, San Francisco, CA, for Defendants.

## SUMMARY JUDGMENT ORDER

LARSON, United States Magistrate Judge.

### INTRODUCTION

The parties' cross-motions for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, came on for hearing on September 4, 2002. Appearing for Plaintiff Republic Western Insurance Co. was James J. Braze, GORDON & REES. Appearing for Defendant and counter claimant Donald Karr was Brian Soriano and Lee S. Harris, GOLDSTEIN, GELLMAN, MELBOSTAD, GIBSON & HARRIS LLP. Appearing for Defendant and counter claimant Fireman's Fund was Asim Desai and Donald Peterson, CARLSON, CALLADINE & PETERSON LLP. The court heard oral argument and took the matter under submission. Having fully considered the briefing and arguments of counsel, the court grants summary judgment for Plaintiff as to all issues.

### FACTUAL AND PROCEDURAL BACKGROUND

This court has jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 636(c).[1]

---

1. All parties have consented in writing to the jurisdiction of this court, as required by 28 U.S.C. § 636(c)..

This is a declaratory relief action by Plaintiff Republic Western Insurance Co. ("Republic Western"), which issued a personal umbrella policy[2] to Defendant and Counterclaimant Donald Karr ("Karr"). Defendant and Counter claimant Fireman's Fund Insurance Co. ("Fireman's Fund") issued a primary liability policy to Karr. The Fireman's Fund policy provided coverage for bodily injury, property damage and personal injury caused by an occurrence arising from personal activities. (Karr Decl. in Support of Opposition at 1:24–2:2) The Republic Western policy was a commercial umbrella liability policy with a personal umbrella liability endorsement. (Karr Decl. in Support of Opposition at 2:7–11)

Karr in his counterclaim seeks $2,000,000 in extra-contractual damages for bad faith on the part of his insurers. Fireman's Fund has already paid to Karr the $200,000 he claims to have expended on his legal defense against the Mora lawsuit. The district court (Hon. Claudia Wilken) has previously ruled that California law applies to this case.

The underlying lawsuit arose when Karr began building a house in a subdivision in Palm Beach, Florida.[3] At first his new neighbor, Abraham Mora, agreed to allow him to exceed the limits in the covenants and restrictions governing the subdivision, for example, to build a three-car garage. However, Mr. Mora changed his mind. The reason, he claimed, was that trucks belonging to Karr's contractor parked on his seawall and damaged parts of it, that a wall Karr built re-directed drainage into the same seawall and potentially undermined it, that Karr's contractors deliberately cut tree roots and limbs on Mora's property and that of another neighbor, that the vibration from the trucks broke the water main into his house and that Mora's two year old daughter suffered rashes and respiratory problems from the construction dust.

On May 1, 1996 Mora filed a Complaint for Declaratory Judgment against Karr in the Circuit Court of Palm Beach, Florida, that certain deed restrictions on Karr's property were valid. The complaint did not seek damages. Karr claims that his letter to his insurers described Mora's claims for property damage and personal injury and that both insurers declined to defend him in the Mora matter. (Karr Decl in Support of Opposition at 3:4–9). The case was tried to a jury in November 1998 and resulted in a verdict against Karr in the amount of $7,000. Trial of equitable defenses raised by Karr was set for June 1999. The action was settled for mutual releases in late 1998 or early 1999. (Complaint at 11:18–22) Karr then sued his insurers for his defense costs, which were between $165,000 and $200,000.

In June 1996 either Karr cancelled or Republic Western did not renew the umbrella coverage. (Ex. 1 to Soriano Decl.)

A letter from Republic Western to Karr dated November 10, 1997, denies coverage because of a "Designated Premises Limitation" that coverage for liability extends

2. According to the deposition of Martha Hart, an employee of Republic Western in the claims department, the policy Mr. Karr purchased from Republic Western was for business liability coverage and business umbrella liability coverage and personal umbrella liability coverage and that the umbrella coverage for both business and personal lines could in some situations be primary coverage. (Ex. B to Soriano Decl. at 95:9–16)

3. This account is taken from Republic Western's Memorandum of Points & Authorities at 4:10–5:5, and this version of the underlying lawsuit has not been contested by Mr. Karr. See also Karr Decl. in Support of Opposition at 3:1–3.

only to his business in San Francisco,[4] not to his new house in Florida. (Ex. 1. to Soriano Decl. in Support of Opposition, letter to Karr from Martha W. Hart). The Republic Western policy also had a business limitation clause, under which coverage counsel for Republic Western found coverage under the policy to be excluded for the injuries alleged by Mr. Mora. (Ex. 1 to Soriano Decl. in Support of Opposition). However, coverage counsel also found that this exclusion was cancelled by the personal umbrella coverage provided by the policy. Counsel was of the opinion that neither insurer would have a duty to defend under Florida law but that Fireman's Fund would have a duty under California law.

Fireman's Fund, relying on the original complaint in the Mora–Karr lawsuit, believed it to be for breach of contract, which was not covered under the policy. Mora's Fifth Amended Complaint, however, included claims for loss of enjoyment and damage to the health of Mr. Mora's young child. Both types of claims were covered under the policy. Fireman's Fund acknowledged its coverage at the settlement conference before this court at a time when the case was still assigned to Judge Wilken for trial. Fireman's Fund paid Mr. Karr $198,000 to cover his attorney's fees for the defense against Mr. Mora's lawsuit. Now Fireman's Fund seeks to be reimbursed by Republic Western. Republic Western filed this declaratory relief action that it owed nothing to either Karr or Fireman's Fund.

The complaint seeks relief as follows:

Count 1) For a declaration as to whether California or Florida law applies. Republic Western contends that Judge Wilken's ruling that California law applies in effect grants it summary judgment on this count.

Fireman's Fund contends that her ruling means only that California law applies to this dispute, and does not mean that Republic Western has no duties as set forth in the first and second causes of action.

Count 2) If Florida law applies, for a declaration that the Republic Western policy is not applicable. If Florida law applied, then the allegations of Mr. Mora, whose suit against Karr set this whole dispute in motion, would not have triggered a duty to defend by Fireman's Fund. Under Florida law, only the allegations of the complaint determine a duty to defend. Mr. Mora's complaint was a declaratory relief action that Karr's home construction violated the covenants and restrictions of their subdivision. He also raised issues of property damage and personal injury, claiming damage to his home from Karr's construction project and injury to his two year old daughter's health caused by construction dust. Under California law, these allegations trigger a duty to defend, even though they were outside the complaint.

Count 3) If California law applies, for a declaration that the Republic Western policy is not applicable. This is the core issue. Republic Western claims that its duty to defend is only triggered when primary coverage is denied or exhausted, and that neither occurred in this case. Fireman's Fund claims that Karr withdrew his claim on its policy.

## ANALYSIS

Federal Rule of Civil Procedure 56 states that a moving party is entitled to summary judgment as a matter of law where there is no genuine issue of material fact. A court should consider a material fact, one which may affect the outcome of a case, to be in dispute where there is suffi-

4. Mr. Karr now lives in Palm Beach, Florida.

cient evidence for a reasonable jury to return a verdict for the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court also noted that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. The nonmoving party has the burden of producing operative facts, and the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. If operative facts are not presented, summary judgment is appropriate.

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, any inferences from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.* at 587, 106 S.Ct. 1348.

Rule 56(c) requires that summary judgment "shall be rendered forthwith" if there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. The *Celotex* Court also stated that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *Id.* at 323–24, 106 S.Ct. 2548, and that the summary judgment procedure should not be regarded as a "disfavored procedural shortcut" but should be viewed as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. 2548.

> [Judges are not] required to submit a question to a jury merely because *some* evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.

*Anderson,* 477 U.S. at 251, 106 S.Ct. 2505, *quoting Improvement Co. v. Munson,* 81 U.S. 442, 14 Wall. 442, 448, 20 L.Ed. 867 (1871).

Karr contends that there is ambiguity in the language of the Republic Western policy which would make its coverage primary if the insured did nothing to violate the primary policy and the insurer denied coverage. This is an overenthusiastic interpretation of the Republic Western policy language. Karr contends that the language is ambiguous and should be construed against Republic Western, as the drafter of the policy, in the light of Cal. Civ.Code § 1654.

The paragraph on which Karr relies reads:

> *"primary insurance or primary policies"* means the policies listed in the Primary Insurance Schedule (including renewal or replacement policies). *We* will consider the policy limits of liability as listed in the Primary Insurance Schedule to be available regardless of any defense which the insurer who provides the policy may assert because of *your* failure to comply with any condition of the policy, or the inability of the insurer to pay by reason of bankruptcy or insolvency. In no event shall the insurance provided by this policy operate to reduce the amount of or contrib-

ute to any loss paid on behalf of such insolvent insurer by any guarantee fund or association.

(Karr Decl. in Support of Opposition at Ex. A)

This paragraph is part of Section Four of the policy—"Defined Words or Phrases." Republic Western counsels its insured that his primary insurance carrier's coverage will be deemed to be in effect even if his tender of defense is denied when he has fully complied with the conditions of the policy or even if the primary carrier goes bankrupt. These are not the sole conditions under which Republic Western will consider the primary insurance policy limits to be available, but they constitute examples of the extraordinary situations in which an insured might believe his excess carrier would step down. Republic Western admonishes its insured that even if primary carrier refuses to defend when he has done everything right, or the carrier declares bankruptcy, its policy limits will still be considered to be available, and the excess coverage will not be triggered.

Both Mr. Karr and Fireman's Fund objected to the Declaration of Donald Braze, counsel for Republic Western. Mr. Karr's motion to strike the declaration was denied at the hearing on this motion. The only facts contained in Braze's declaration upon which the court relied in reaching its decision were these: (1) that the Fireman's Fund policy was the primary policy, affording coverage to Mr. Karr for property damage and personal injury. This is confirmed by Mr. Karr himself, and authenticated by his personal knowledge (Karr Decl. in Support of Opposition at 1:24–2:2); (2) that the Republic Western policy afforded Mr. Karr commercial umbrella liability and personal umbrella liability cover-

age, also confirmed by Mr. Karr (Karr Decl. at 2:7–11); and that Fireman's Fund paid to Mr. Karr and his attorney the amount of $198,000, also confirmed by Mr. Karr's counsel (Decl of Brian Soriano in Support of Opposition at 2:5–9). The court also considered the language of the Republic Western policy, offered at Republic Westerns' Memorandum of Points and Authorities in Support of its Motion at Ex. A. There was no objection to this exhibit.

In an abundance of caution, the court reconsidered its order denying the motion to strike the Braze Declaration and required Republic Western to fully authenticate the documents appended to that declaration, as well as exhibits attached to its Memorandum of Points & Authorities in Support of its Motion for Summary Judgment.[5]

■ Generally, as provided by Rule 56, Fed.R.Civ.P., only admissible evidence may properly be considered by the trial court in granting summary judgment. *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir.1980). Properly authenticated documents, including discovery materials, although such documents may not be admissible in that form at trial, can be used in a motion for summary judgment if appropriately authenticated by affidavit or declaration. *U.S. v. Berg*, 190 F.R.D. 539 (E.D.Cal.1999). Civil Local Rule 7–5(a) states:

**Affidavit or Declaration Required**. Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admissions and other evidentiary matters must be appropriately authenticated by an affidavit or declaration.

---

**5.** *See* Supplemental Decl. of James J. Braze,  filed November 22, 2002.

In addition, Federal Rule of Civil Procedure 56(e) requires that affidavits supporting a Motion for Summary Judgment "... be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein." This is reiterated in Civil Local Rule 7–5(b), which states that "an affidavit or declaration may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e)" .. and that "[a]ny statement made upon information or belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part."

In the case at bar, this court finds that there are no material facts in dispute with respect to coverage, including policy limits, provided by Fireman's Fund and Republic Western and the nature of the claim by Abraham Mora against Donald Karr. These are the only facts relevant to whether Republic Western had a duty to defend Karr in the Mora lawsuit. The relevant facts are confirmed by Mr. Karr himself, who cannot very well object to his own sworn declaration. In addition, all the documents objected to by Mr. Karr were properly authenticated by the Supplemental Declaration of James J. Braze, filed November 22, 2002.

## EXCESS CARRIER'S DUTY TO DEFEND

█ Under California law, once the underlying policies are exhausted, the carrier which wrote the umbrella policies and excess policies has a duty to defend or reimburse defense costs. *Hartford Acc. & Indem. v. Superior Court* (1994) 23 Cal. App.4th 1774, 29 Cal.Rptr.2d 32; *Signal*

*Cos. Inc. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359, 370, 165 Cal.Rptr. 799, 612 P.2d 889.

█ However, an excess insurer has no duty to defend where the primary insurer refused the tender of defense. The duty to defend by the primary carrier, in this case Fireman's Fund, arose when there was a claim for damages for an occurrence under the policy and no defense coverage was provided. So long as defense obligations were payable, regardless of whether they were actually paid by the primary carrier, there was no duty to defend under Republic Western's excess policy. *Ticor Title Insurance Co. et al. v. Employers Insurance of Wausau*, 40 Cal.App.4th 1699, 48 Cal.Rptr.2d 368 (1995).

█ In the case at bar, this means that, under California law, allegations of property damage and personal injury triggered a duty to defend under the liability provisions of the policy, even though the complaint only alleged contractual violations. Another problem for Karr is the question of whether he withdrew his tender to Fireman's Fund. Fireman's Fund claimed that after he submitted his claim for the damages alleged by Mr. Mora, he was very difficult to contact and that Fireman's Fund assumed he had abandoned his claim.[6] Ultimately, this question of fact is not material to the outcome of these motions.

Under California law, Fireman's Fund had a duty to defend Karr once claims were made for property damage and personal injury, even outside the allegations of the complaint. However, no event occurred which triggered a duty to defend by Republic Western. Fireman's Fund's policy limits were not exhausted. If Re-

---

6. This may have been because he was in the process of moving to Florida. See Ex. 1 to Soriano Decl, deposition of Ms. Hart, on Re-

public Westerns's attempts to contact Karr by mail.

public Western had no duty to defend, then a cause of action for bad faith cannot be brought against it.

The foundation for this court's ruling that Republic Western did not have a duty to defend Karr and, therefore, there is no cause of action against it either for breach of the insurance contract or for bad faith, is the holding in the *Ticor* case. In that case the California Court of Appeal reversed a decision for the insured in a declaratory action against an insurance company. The Court of Appeal held that the excess carrier had no duty to defend even when the primary carrier refused the tender of defense. The duty to defend arose when there was a claim for damages covered by the umbrella policy and "no defense coverage [was] provided by underlying insurance." The court ruled that coverage means "inclusion within the scope of an insurance policy," not "the act or fact of covering." Thus "coverage" has nothing to do with how, in reality, the insurer acts with respect to its insurance obligations. So long as defense obligations were "payable" (not actually paid) by the primary insurer, there was no duty to defend under the excess policy. *Ticor v. Wausau,* 40 Cal.App.4th 1699, 48 Cal.Rptr.2d 368 (1995).

What this means in the case at bar is that as long as Fireman's Fund had a duty to defend Karr and provide coverage for his legal expenses in defending against the *Mora v. Karr* lawsuit, then Republic Western's policy did not step down and provide coverage, even where the claim involved a type of damage covered by the umbrella policy.

■ Judge Wilken on October 16, 2001, ruled by minute order that the motion of Donald Karr for partial summary judgment under FRCP 56(c), or in the alternative for an order specifying certain issues to be deemed established for purposes of trial, was granted. Karr's motion sought an order "that the following issues are deemed established for the purposes of the trial of this case:

1.  That Florida law does not apply.

2.  That California law applies."

Under the doctrine of *stare decisis,* Judge Wilken's ruling means that California law applies to the interpretation of the coverage available under each policy. Under California law, Fireman's Fund, as the primary insurance carrier, had a duty to defend against claims even outside the parameters of the original complaint. *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal.App.4th 1017, 123 Cal.Rptr.2d 256, *citing Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). In his suit against Karr, Mora raised claims for property damage and personal injury in his Fifth Amended Complaint. Therefore, Fireman's Fund had a duty to defend Karr in the *Mora v. Karr* lawsuit, because there were allegations of property damage and bodily injury, both of which were covered by Karr's insurance policy with Fireman's Fund. This is regardless of whether Karr withdrew his claim.

As long as the claims were covered by the Fireman's Fund policy and the primary policy limits had not been exhausted, then as a matter of law, Republic Western had no duty to defend Karr or by extension to pay his attorney fees. Incidentally Karr was the one who moved for summary judgment that California law applied to the policy, presumably since that would broaden the coverage to include Mora's complaints for property damage and bodily injury, even though they were only added in his Fifth Amended Complaint in the Florida lawsuit. Although this ruling triggered Fireman's Fund's duty to defend, it simultaneously relieved Republic Western,

since its duty would only arise if there were no primary coverage under the Fireman's Fund policy under the *Ticor* case.

The policy in the *Ticor* case provided, in pertinent part:

"With respect to any claim or suit seeking damages by reason of an occurrence to which this policy applies or would apply except for the amount of the *retained limit, and for which no defense coverage is provided by underlying insurance...*, the company will defend any such suit against the insured alleging such damages and seeking recovery on account thereof ... [¶] The company will pay, in addition to the applicable limit of liability, the following *defense expenses* ..." (Italics in original, italics added) *Ticor v. Wausau,* 40 Cal.App.4th 1699, 1707, 48 Cal.Rptr.2d 368 (1995).

In the case at bar, the following provisions are included in Karr's Republic Western umbrella policy:

Section Nine—General Conditions

Other Insurance and Non–Cumulation

If insurance, provided by a company other than us, applies to claims covered by this policy, the insurance under this policy is excess and we won't make any payments until the other insurance has been used up. This won't be true, however, if the other insurance is specifically written to be excess over this policy.

(Republic Western policy, Ex. 7 to Supplemental Braze Decl. at page 6); *See also* Complaint for Declaratory Relief at 5:14–20.

In Paragraphs 11, 12 and 13 of the Complaint, Republic Western alleges, and Karr does not deny, that Karr had primary insurance coverage from Fireman's Fund for comprehensive personal liability, in effect from 1994 through 1997. This provided liability coverage for claims of bodily injury and property damage.

What the court's ruling in the *Ticor* case means as applied to the case at bar is that the Republic Western policy becomes primary (steps down) only if the primary insurance policy (Fireman's Fund) does not include coverage for the costs of defending the *Mora v. Karr* lawsuit. However, "providing coverage" does not mean being willing either to pay or to defend. It means only that the primary insurer should have provided coverage, regardless of what it chose to do.

If Florida law applied to the coverage question, and Fireman's Fund had only been obliged to provide coverage for the events alleged on the face of the *Mora v. Karr* complaint, then Republic Western could well have been obliged to assume a duty to defend, if the claims had been for a type of damage covered by the umbrella policy, which they were. However, California law applied to the coverage question and Fireman's Fund had a duty to defend, once Mora raised claims for property damage and personal injury, both covered events under the Fireman's Fund policy. Republic Western had no duty to defend, until the Fireman's Fund policy limits were exhausted. The causes of action in the Mora complaint for breach of the building code by Karr were not covered under either policy.

Republic Western's policy reads in Section C as follows: The following exclusions are added to Subsection two of Section Three, "what is excluded—claims we will not cover:"

Contractual Liability. "We" will not cover or defend against claims for "injury or damage" if the obligation for such "injury or damage" was assumed under any "contract or agreement." (Ex. 7 to Supplemental Decl. of James J. Braze).

The Fireman's Fund policy states that "This policy does not apply: ... c. under

Coverage II (bodily injury) to liability assumed by the insured under any contract or agreement." (Ex. B to Republic Western's Memorandum of Points & Authorities in Support of Motion).

The public policy reasons for the *Ticor* ruling become apparent when the court considers how the umbrella carrier is supposed to underwrite its policy and calculate its risk. Under the ruling in *Ticor*, the umbrella carrier need only look to the policy language of the primary insurance company to know what its risks are. If its duty to defend were to arise instead from any refusal by the primary carrier to provide coverage or to defend an insured, whether or not that action was correct based on the policy, then the umbrella carrier, in underwriting its own policy, would also have to consider the track record of the primary carrier for good faith assumption of its duty to defend.

The court's finding that Republic Western had no duty to defend as long as there was coverage under the Fireman's Fund policy and the coverage limits had not been exhausted is a matter of law and holds true regardless of whether Karr withdrew his claim to Fireman's Fund.

Given Judge Wilken's prior ruling that California law applies to this case, under the principle of *stare decisis*, Fireman's Fund, as the primary carrier, had a duty to defend Karr in the *Mora v. Karr* lawsuit. Fireman's Fund's coverage was not exhausted, so no duty on the part of Republic Western was ever triggered. This is so, regardless of whether Karr withdrew his claim with Fireman's Fund and regardless of whether Fireman's Fund refused to defend Karr.

## CONCLUSION AND ORDER

For all the above reasons, this court rules as follows:

1. As to whether Florida or California Law Applies. This question was resolved by Judge Wilken, who ruled that California law applies to this case. Summary judgment is granted as to this issue.

2. With respect to the Second Count of the Complaint, which seeks a declaratory ruling, if Florida law applies, that the Republic Western Policy is not applicable: this was also resolved by Judge Wilken's ruling that California law applies to this case. This claim is denied as moot.

3. With respect to the Third Count of the Complaint that, if California law applies, the Republic Western Policy is not applicable, this court grants Republic Western's motion for summary judgment.

4. With respect to the counterclaim of Donald Karr against Republic Western for breach of contract and bad faith, Republic Western requests summary judgment as to the claim for breach of contract because it had no contractual duty to defend. The court grants summary judgment for Republic Western on the first cause of action under the counterclaim.

5. As to the second cause of action, for bad faith, if there is no contractual duty, there can be no bad faith; therefore, this court grants Republic Western's motion for summary judgement as to that cause of action as well.

6. Republic Western contends that Karr's third cause of action under the counterclaim, for declaratory relief, has been rendered moot because Fireman's Fund has paid the contract benefits. This court finds no duty of Republic Western to pay Karr's legal expenses; therefore, summary judgment for Republic Western is granted on this cause of action.

In conclusion summary judgment must be granted for Republic Western as to the entire cause. This resolves Docket Numbers 97–1 and 97–2.

Whether Karr has a cause of action against Fireman's Fund for bad faith cannot be resolved on the pleadings presently before the court.

IT IS SO ORDERED.